**IN COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 49477**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: May 7, 2024** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JOSEPH DEAN PHILLIPS, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Minidoka County. Hon. Michael P. Tribe, District Judge.

Judgment of conviction for first degree stalking and being a persistent violator, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Jacob L. Westerfield, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

---

MELANSON, Judge Pro Tem

Joseph Dean Phillips appeals from his judgment of conviction for first degree stalking with a persistent violator enhancement. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2010, Phillips pled guilty to stalking, I.C. § 18-7906, a charge in which E.S. was the victim. A no-contact order was issued in connection with that case prohibiting Phillips from having contact with E.S. until March 2019. Beginning in February 2018, Phillips attempted to contact E.S. multiple times over Facebook. Phillips continued in his attempts to contact E.S. through numerous messages and calls on social media. In April 2018, E.S. saw Phillips walking on a roadway near her residence. When officers contacted Phillips, he said he was in the area to

1

meet with E.S. Phillips was arrested for violating the no-contact order. A search of his backpack revealed plastic champagne glasses, candles, makeup, and earrings. Phillips told officers those items were gifts for E.S. Phillips was charged with first degree stalking, I.C. § 18-7905; violation of a no-contact order, I.C. § 18-920; and a persistent violator enhancement, I.C. § 19-2514.

Prior to the date set for trial, defense counsel filed a motion for a psychiatric or psychological examination of Phillips pursuant to I.C. §§ 18-211 and 18-212, which was granted. The motion referred to a previous evaluation done in 2011 in connection with the prior criminal charges in which Phillips was found not competent to proceed. In that case, he spent three months at State Hospital South until he was found able to proceed. The 2018 evaluation again found that Phillips was unable to proceed and that he needed ongoing supervision by the mental health system. The district court entered an order suspending the proceedings and ordering the commitment of Phillips pursuant to I.C. § 18-212(2). A report to the district court from State Hospital South dated January 23, 2019, indicated that Phillips was again fit to proceed. The report recommended that Phillips' court date be scheduled as soon as possible to avoid deterioration of his mental status. The report noted that it was highly critical that Phillips' psychiatric medications be continued while he was in jail in order to maintain his fitness to proceed and that, if he did not receive his medications, he would very likely decompensate and again require hospitalization.

A jury trial commenced on December 18, 2019. On the second day of trial, shortly after E.S. began to testify,[1] Phillips requested a recess. Phillips indicated that he wished to plead guilty to stalking and admit to the persistent violator enhancement. While the jury waited in the jury room, the district court informed Phillips of the charges against him, the maximum penalties associated with the charges, and the rights he would waive if he pled guilty. As part of a plea colloquy, the district court asked Phillips if he was "currently taking any prescription medication," to which Phillips responded, "No." The district court did not further inquire about medication or the state of Phillips' mental health. No I.C.R. 11 guilty plea advisory form was required by the

---

[1]    Police officers had already testified. E.S. had responded to a question indicating that she had never had a conversation with Phillips and did not want to have one.

2

district court.[2] Phillips entered an *Alford* plea,[3] which was accepted by the district court as being knowingly and voluntarily given with the advice and consent of counsel. Four days later, Phillips, through counsel, filed a motion to withdraw his guilty plea. His attorney then filed a motion to withdraw as counsel. The district court granted counsel's motion to withdraw and appointed another attorney to represent Phillips. The new attorney filed an amended motion to withdraw Phillips' guilty plea, along with a motion for a psychological or psychiatric evaluation. On May 19, 2020, the district court ordered another competency evaluation, which disclosed that Phillips was not competent to proceed. The district court then suspended the proceedings and ordered Phillips to be committed. By December 2020, Phillips' competency had again been restored.[4]

On January 26, 2020, the district court held a hearing on Phillips' amended motion to withdraw guilty plea. Phillips argued that he was not competent at the time of his change of plea, that he was not provided his medications while in jail, and that his disclosure that he had not taken his prescription medication during the plea colloquy was a "red flag" that should have alerted the

---

[2] Idaho Criminal Rule 11(e) provides that, as an aid to taking a plea of guilty a court *may* require the defendant to fill out and submit a guilty plea advisory form. A form for that purpose is found in an appendix to the rule. Among numerous other things, the ten-page form requires a defendant to disclose whether he or she is under the care of a mental health professional, whether he or she has ever been diagnosed with a mental health disorder and the nature of the disorder, whether he or she is prescribed medication, and whether he or she has taken his prescription medication in the last twenty-four hours. It is apparent that the district court did not use the form because there had already been a lengthy delay while defense counsel discussed the plea with Phillips and the jury waited in the jury room. In its order denying Phillips' motion to withdraw his guilty plea, the district court noted that, in retrospect it should have had Phillips complete the guilty plea advisory form despite the mid-trial nature of his guilty plea and that, going forward, it would "require a guilty plea advisory form to be completed no matter the stage of litigation or perceived inconvenience to the jury."

[3] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

[4] The report from State Hospital South again recommended that Phillips' court date be scheduled as soon as possible to avoid deterioration of his mental status. The report further noted that it was highly critical that Phillips' psychiatric medications be continued while he was in jail in order to maintain his fitness to proceed and that, if he did not receive his medications, he would very likely decompensate and again require hospitalization.

district court that he was not competent. The State argued that Phillips had been found competent prior to trial, he appeared to be competent during the trial, there was no indication that he did not understand the proceedings based on the district court's colloquy, his lack of competency after the plea should not "relate back," and the district court did not have an obligation to ensure that Phillips was taking his prescription medications. The State also argued that it would be prejudiced by the withdrawal because it had already begun a trial, empaneled a jury and called witnesses, and because E.S. would be revictimized by having to return to testify at a second trial when she was terrified to testify. After taking the matter under advisement, the district court held an evidentiary hearing to allow the parties to present evidence regarding whether Phillips had been denied medications while in custody as his counsel had argued. A jail nurse testified that, when Phillips returned from the state hospital his prescribed medications were always made available to him. The nurse further testified that Phillips stopped taking his medication after a few days and that the jail does not force inmates to take medications against their will absent a court order.

On May 12, 2021, in a written memorandum decision, the district court denied Phillips' motion to withdraw his guilty plea. The case was then set for sentencing. However, on July 28, 2021, defense counsel filed another motion for psychiatric or psychological evaluation which was granted. Phillips was, again, found unfit to proceed. After his competency was restored, a sentencing hearing was held on July 18, 2022, and the district court sentenced Phillips to a unified term of thirty years, with a minimum period of confinement of twelve years. Phillips appeals, arguing that the district court abused its discretion by denying his motion to withdraw his guilty plea.

## II.

## STANDARD OF REVIEW

Whether to grant a motion to withdraw a guilty plea lies in the discretion of the district court and such discretion should be liberally applied. *State v. Freeman*, 110 Idaho 117, 121, 714 P.2d 86, 90 (Ct. App. 1986). Appellate review of the denial of a motion to withdraw a plea is limited to determining whether the district court exercised sound judicial discretion as distinguished from arbitrary action. *Id.*

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the

4

issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Phillips argues that the district court abused its discretion when it denied his motion to withdraw his guilty plea. Phillips argues that his guilty plea was not knowingly, voluntarily, and intelligently made because he was "very likely" incompetent at the time of his plea. Phillips also challenges two of the district court's factual findings regarding his grounds for withdrawal.

### A. Validity of Plea

In order to enter a valid guilty plea, a defendant must be competent and the plea must be knowingly, voluntarily, and intelligently made. *Workman v. State*, 144 Idaho 518, 527, 164 P.3d 798, 807 (2007). In order to be competent to enter a guilty plea, a defendant must have a rational understanding of the proceedings against him or her and must be able to assist in his or her own defense. *Godinez v. Moran*, 509 U.S. 389, 400 (1993); *Workman*, 144 Idaho at 527, 164 P.3d at 807.

The record indicates that Phillips has been diagnosed with schizophrenia--paranoid type. Phillips has a longstanding delusional belief that E.S. loves him and that they are to be married but that there is a conspiracy to keep them apart. He has held these false, but apparently intractable, beliefs for many years. Phillips also harbors delusional beliefs about law enforcement officers and the courts. Five weeks after Phillips' guilty plea was accepted by the district court, at a hearing on defense counsel's motion to withdraw as Phillips' attorney, Phillips told the district court that he pled guilty because he was in fear of his life as well as his fiancée's life. When the district court inquired, "Who is your fiancée?" Phillips responded, "[E.S.], soon to be Phillips, wearing my ring. She was dressed in my tennis shoes and my jacket. She accepted my marriage proposal."

It is clear from the record that Phillips is sometimes competent and sometimes incompetent. However, the relevant question in this case is whether Phillips was competent at the time he pled guilty. Evidence of Phillips' incompetence at a time other than entry of his guilty plea is insufficient on its own to demonstrate that he was incompetent when the plea was entered. *See State v. Anderson*, 156 Idaho 230, 235, 322 P.3d 312, 317 (Ct. App. 2014).

5

The district court observed Phillips during the two days of trial preceding his guilty plea. The record does not reflect that Phillips exhibited any erratic or inappropriate behavior. His counsel did not raise any concerns about his competency. During the second day of trial, after E.S. began to testify and Phillips informed the district court that he was prepared to plead guilty, the district court twice asked Phillips if it was his "intention to enter a guilty plea at this time," to which Phillips responded in the affirmative. Phillips and his counsel affirmed that they had discussed the impact and effect of entering the guilty plea and that Phillips understood the consequences and rights he would be waiving by pleading guilty. His counsel stated that Phillips was "fully informed and he is making a knowing decision to enter a guilty plea" with defense counsel's consent. The district court conducted a thorough colloquy during which Phillips' responses were appropriate and rational:

> [COURT]: We're back on the record in CR34-18-1371. Mr. Phillips is present with counsel; the State is here. The jury is still in the jury room.
> I visited with counsel. It's my understanding, Counsel, that we may have a resolution to the matter. Is that correct?
> [COUNSEL]: That's correct, Your Honor. Upon speaking with Mr. Phillips, he is prepared to plead to the stalking charge and to the persistent violator. There will be open recommendations at the time of sentencing as to the underlying sentence.
> [COURT]: Okay. [State], anything else the State wants to make of record?
> [STATE]: No, Your Honor. Thank you.
> [COURT]: Give me just one moment. All right. We're in a little different position than normal. Obviously, we're day two of trial.
> And, Mr. Phillips, normally we have what's called a Guilty Plea Advisory Form and we have a certain day set aside for an entry of plea. And is it your intention to enter a guilty plea at this time?
> [PHILLIPS]: Yes, Your Honor.
> [COURT]: And have you talked with your counsel about the impact and the effect of entering your plea today?
> [PHILLIPS]: Yes, Your Honor.
> [COURT]: Okay. [counsel], do you believe your client understands what he's doing today?
> [COUNSEL]: I do, Your Honor.
> [COURT]: Okay.
> All right. Is it your intention to plead guilty pursuant to the agreement that's been put on the record, Mr. Phillips?
> [PHILLIPS]: Yes, Your Honor.

[COURT]: Okay. I'm going to have you stand and raise your right hand and we're going to put you under oath and I'm going to ask you a few more questions.

([Phillips] was sworn.)

[COURT]: All right. Mr. Phillips, go ahead and have a seat.

And I'm going to ask you some questions, and this is not meant to talk you out of the agreement, not to make you take the agreement. I just want to make sure that I'm comfortable that you understand what you're doing and the impacts and the effect of taking the plea today.

So, have you consumed any alcohol or drugs in the last 48 hours?

[PHILLIPS]: No, sir.

[COURT]: Are you currently taking any prescription medication?

[PHILLIPS]: No, Your Honor.

[COURT]: Okay. And what's your date of birth?

[PHILLIPS]: 12/20/63.

[COURT]: And what's your full legal name?

[PHILLIPS]: Joseph Dean Phillips.

[COURT]: Okay. And other than the fact that you're in the middle of a felony jury trial, is there anything else going on in your life that would make it difficult for you to make a reasoned and informed decision about entering your plea today?

[PHILLIPS]: No, Your Honor. This has all been well thought out.

[COURT]: Okay. And do you feel like you've had enough time to talk about this with your lawyer?

[PHILLIPS]: Yes, Your Honor.

[COURT]: And is there anything you've asked your lawyer to do that he hasn't done for you up to this point?

[PHILLIPS]: No. [defense counsel] has represented me to the fullest of his ability.

[COURT]: And you're satisfied with his representation of you?

[PHILLIPS]: Yes, Your Honor.

[COURT]: And have you gone through with your lawyer the rights that you would be giving up by pleading guilty today?

[PHILLIPS]: Yes, Your Honor.

[COURT]: And, again, normally we would have a Guilty Plea Advisory Form that would explain the rights that you're giving up. And, obviously, one of them is your right to complete this trial. Do you understand you're surrendering your right to finish this trial? Do you understand that?

[PHILLIPS]: Yes, Your Honor. I'm requesting it.

[COURT]: Okay. And has anybody forced or threatened you in any way to enter your plea this morning?

[PHILLIPS]: No, Your Honor.

[COURT]: And you're pleading guilty based on your own free will?

[PHILLIPS]: Yes, Your Honor.

7

[COURT]: All right. So, you'll be pleading guilty to stalking in the first degree. Is that correct?

[PHILLIPS]: Yes, Your Honor.

[COURT]: Do you understand that the maximum penalty for that is five years' incarceration and I believe a $50,000 fine--let me check that. We'll double check it. Do you understand that's the maximum penalty?

[PHILLIPS]: Yes, Your Honor, I understand the five years, but I was unaware of the $50,000.

[COURT]: We will double check that. It could be $5,000. This Court has never given a fine of $50,000, but we'll double check to make sure that's correct. And that's Part One of the Information. Part Two alleges persistent violator. Do you understand that?

[State] ?

[STATE]: Your Honor, I believe it's actually $10,000.

[COURT]: Okay. The court was wildly off on that. So, the maximum penalty is $10,000 for Part One. Do you understand that?

[PHILLIPS]: Yes, I do. I can wipe a little piece of sweat off my forehead.

[COURT]: Yeah, that is a significant difference.

[PHILLIPS]: Thank you, sir.

[COURT]: And Part Two of the Information alleges that you're a persistent violator. Do you understand that?

[PHILLIPS]: Yes, Your Honor.

[COURT]: And do you understand that if you admit to that part, that the Court has to include in the unified sentence at least five years and the Court could impose up to a life sentence. Do you understand that?

[PHILLIPS]: Yes.

[COURT]: Okay. Counsel, I want to just look at one thing. Let me just--I'm going to read this code section because there's always a little bit of confusion on that. So, this is what it actually says, Mr. Phillips. If you plead guilty to the persistent violator portion, it says: You shall be sentenced to a term in the custody of the State Board of Corrections, which term shall be not for less than five years and said term may extend to life. So, I don't believe that's a true mandatory minimum, but it just adds there has to be five years on the unified sentence, up to life.

[COUNSEL]: There's caselaw to that effect, Your Honor, yes.

[COURT]: I wanted to be clear on that. Do you understand that, Mr. Phillips?

[PHILLIPS]: Yes, Your Honor.

[COURT]: Does that change your mind on how you want to proceed today?

[PHILLIPS]: No, Your Honor. Thank you for explaining that to me.

[COURT]: Okay. All right. And my understanding is that there is no agreement as to what the State is going to recommend. It's what's called an open recommendation at sentencing. Do you understand that?

[PHILLIPS]: Yes, I do.

[COURT]: Okay. And the Court's intention is, once you enter your plea today, I'll order what's called a Pre-Sentence Investigation Report. Do you understand that?

[PHILLIPS]: Yes, I do.

[COURT]: And once you and I are done talking, you won't be under oath, and your right to remain silent will continue into that pre-sentence investigation process. Do you understand that?

[PHILLIPS]: Yes, I do.

[COURT]: All right. And I'll encourage you to talk to [your counsel] about that process. But, nevertheless, it's still your intention to cooperate in that PSI process?

[PHILLIPS]: Yes, it is, Your Honor.

[COURT]: Okay. Do you feel like you need any more time to talk to your lawyer?

[PHILLIPS]: No, I think we're fine.

[COURT]: Okay. So, Mr. Phillips, to Part One in the Information--and I should make record, this is, I have the Fourth Amended Information. I think that's the most recent. It's stalking in the first degree, how do you plead?

[PHILLIPS]: Guilty, Your Honor.

. . . .

[The State makes a record regarding the *Alford* plea]

. . . .

[COURT]: Okay. [Counsel], anything else you would like to make of record at this time?

[COUNSEL]: Your Honor, Mr. Phillips and I spoke both about--frankly, it was Mr. Phillips who nudged me and told me that he wanted to enter a plea in order to stop the testimony. I spoke to Mr. Phillips about the effect of the plea. We talked about--he requested that I make some requests of the State.

I presented those to the State. The State chose not to accept those requests, but I did speak to Mr. Phillips about what an *Alford* plea is, what the effect was of an *Alford* plea, so I think he's fully informed and he is making a knowing decision to enter a guilty plea, and it is with my consent. Your Honor.

In its written memorandum decision denying Phillips' motion to withdraw his guilty plea, the district court concluded:

> [The district court] had the opportunity to observe Phillips for nearly two days over the course of the trial and did not observe any erratic behavior or any behavior that lead[s] the Court to believe he was not competent. A review of the transcript of the change of plea colloquy and the entirety of the proceedings reaffirms the [c]ourt's belief that Phillips was aware of the proceedings, that he initiated the change of plea and that the plea was knowingly, voluntarily, and intelligently given.

The district court noted that no testimony or evidence had been provided regarding Phillips' competency during the change of plea that conflicted with the district court's observation of

Phillips during the change of plea and the trial. Based on its observations, the district court found Phillips clearly understood the proceedings. The district court's findings are supported by substantial competent evidence.

**B.      Claims of Factual Error**

Presentence withdrawal of a guilty plea is not an automatic right. The defendant has the burden of showing that a just reason exists to withdraw the plea. *State v. Hanslovan*, 147 Idaho 530, 535, 211 P.3d 775, 780 (Ct. App. 2008). A defendant's failure to present and support a plausible reason for withdrawing a guilty plea will dictate against granting the withdrawal, even absent prejudice to the prosecution. *State v. Dopp*, 124 Idaho 481, 486, 861 P.2d 51, 56 (1993).

Phillips argues that the district court's finding that Phillips stopped taking his medications in December 2019 was clearly erroneous. In January 2019, after Phillips was found competent to proceed, he was returned to jail in Minidoka County. His guilty plea was entered in December 2019. At the hearing on Phillip's motion to withdraws his guilty plea, he asserted that he had been denied his prescribed medications while he was in jail. Thereafter, the district court sua sponte held an evidentiary hearing on that issue before ruling on the motion.

At the hearing, a jail nurse testified that Phillips' medications were always made available to him but that he stopped taking them a few days after his return to the jail in January 2019. No other evidence was offered on that issue. The district court's finding that Phillips stopped taking his medication in December 2019 was, therefore, erroneous. Because the evidence was that Phillips had actually stopped taking his medications in January 2019, Phillips failed to present evidence showing the significance of the timing of his own decision to stop taking his medication.[5] The only evidence of his mental state was that he was incompetent in August 2018, was restored to competence in January 2019, was again incompetent in May 2020, and was restored to competence in December 2020. His guilty plea was entered in December 2019. While the reports from the staff at State Hospital South (which were not in evidence but were referred to by defense counsel) would suggest that Phillips' mental state was very likely to deteriorate if he stopped taking his medication, the only evidence before the district court of Phillips' competence on the day he

---

[5]     The record does not reflect that the district court took judicial notice of the reports from State Hospital South nor that any request was made that it do so.

pled guilty was the district court's own observation of Phillips during the trial and the plea colloquy, which does not reflect any indication of incompetence or the delusional beliefs Phillips subsequently expressed at the hearing on his motion to withdraw his guilty plea. Moreover, Phillips did not produce any other evidence of his mental state on the day of his guilty plea despite being given additional time.

Therefore, the district court's erroneous finding regarding the date Phillips stopped taking his medication was not critical to its decision and was harmless. Phillips also argues that the district court's finding that the impact of his failure to take his medications was "not clear or known to the court" was erroneous. Phillips again relies on the reports from State Hospital South indicating that, if he did not take his medications, he would very likely decompensate. This argument does not avail Phillips for the same reasons. Thus, Phillips failed to carry his burden of demonstrating that a just reason existed to withdraw his guilty plea.

## IV.

## CONCLUSION

Phillips has failed to show that he was incompetent when he entered his guilty plea and has, therefore, failed to demonstrate a just reason to withdraw his plea. In denying the motion the district court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistent with the applicable legal standards while reaching its decision through an exercise of reason. Phillips has failed to show error in the district court's decision. Therefore, Phillips' judgment of conviction for first degree stalking and being a persistent violator is affirmed.

Chief Judge GRATTON and Judge LORELLO, **CONCUR**.